**RESOLUTION TRUST CORPORATION,**
Plaintiff,

v.

**Ernest M. FLEISCHER,**
**et al., Defendants.**

No. 93–2062–JWL.

United States District Court,
D. Kansas.

March 4, 1994.

H. David Barr, Andrea J. Goetze, Gage & Tucker, Overland Park, KS, William L. Turner, Bernard J. Rhodes, R. Kent Sellers, Charles J. Williams, Jeffrey M. Pfaff, Mike L. Racy, Jean Paul Bradshaw, II, Gage & Tucker, Kansas City, MO, Mira N. Marshall, Resolution Trust Corp., Legal Div.–Prof. Liability Section, Robert H. Plotkin, Resolution Trust Corp., Professional Liability Section, Washington, DC, for plaintiff Resolution Trust Corp.

James Borthwick, Michael Thompson, Brian C. Fries, Christopher A. Koster, Blackwell, Sanders, Matheny, Weary & Lombardi, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for defendants Ernest M. Fleischer, Mary Louise Greene, indiv. and as co-trustee for Ted H. Greene Family Trusts, John A. Scowcroft.

Renana B. Abrams, Robert P. Wray, Jennifer P. Kyner, Armstrong, Teasdale, Schlafly & Davis, Kathleen A. Hardee, Thomas H. Stahl, Hoskins, King, McGannon & Hahn, Kansas City, MO, for defendant Duane H. Hall.

John R. Toland, Toland & Thompson, Iola, KS, James Borthwick, Michael Thompson, Brian C. Fries, Blackwell, Sanders, Matheny, Weary & Lombardi, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for defendants Glenn O. McGuire and Harold Yokum.

Delton M. Gilliland, Coffman, Jones & Gilliland, Lyndon, KS, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for defendant Harry T. Coffman.

Richmond M. Enochs, Francis R. Peterson, Wallace, Saunders, Austin, Brown & Enochs, Overland Park, KS, for defendant Thomas R. Weigand.

Thomas R. Weigand, pro se.

Thomas E. Gleason, Jr., Thomas E. Gleason, Chartered, Ottawa, KS, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for defendant Lawrence H. Kramer.

John R. Toland, Toland & Thompson, Iola, KS, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for defendant Stanley Dreher, Jr.

Greer S. Lang, Leonard B. Rose, Rose, Brouillette & Shapiro, P.C., Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank,

Kansas City, MO, for defendant Ted Greene, Jr.

Renana B. Abrams, Jennifer P. Kyner, Armstrong, Teasdale, Schlafly & Davis, Kathleen A. Hardee, Thomas H. Stahl, Hoskins, King, McGannon & Hahn, Kansas City, MO, for defendant Ronald L. Pfost.

James Borthwick, Michael Thompson, Brian C. Fries, Christopher A. Koster, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for defendants Barbara J. Fleischer, as co-trustee for the Ernest W. Fleischer Trust and the Pamela Fleischer Trust and as trustee for the Elizabeth Fredkin Trust and the Judith Fleischer Trust, Boatmen's First Nat. Bank of Kansas City, as co-trustee for the Ted H. Greene Family Trusts, Ernest W. Fleischer, individually and as co-trustee for the Pamela Fleischer Trust, Pamela Fleischer, individually and as co-trustee for the Ernest W. Fleischer Trust, Thomas G. Greene, Larry D. Greene, Gail L. Cluen, Douglas C. Greene, Judith Fleischer, Elizabeth Fredkin.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

*I. Introduction*

This case involves a suit brought by plaintiff Resolution Trust Corporation ("RTC") against former directors and officers of Franklin Savings Association ("FSA"). The claims asserted by plaintiff against defendants are various state law causes of action arising out of a series of transactions involving tax-exempt revenue bonds known as credit enhancement projects and alleged losses sustained through various broker-dealer subsidiaries of FSA. The matter is currently before the court on defendants' motion for partial summary judgment (Doc. #205).

Defendants' motion seeks summary judgment on counts IV through IX of the complaint. Those counts involve claims for breach of fiduciary duty, negligence, negligence per se and breach of implied contract against six former FSA directors[1] for alleged losses arising from the acquisition,

---

1. The claims are asserted against defendants Ernest M. Fleischer, Mary Louise Greene, John A. Scowcroft, Duane H. Hall, Glenn O. McGuire and Harry T. Coffman.

management and control of various broker-dealer subsidiaries of FSA (the "broker-dealer claims"). Defendants contend that the counts should be dismissed because the subsidiary corporations are the proper parties to bring an action for any losses they may have suffered and the RTC, which assumes only the rights of FSA, has no standing to bring an action for losses suffered by the subsidiary corporations. In response, plaintiff RTC argues that it has standing because the claims are asserted on behalf of FSA against the defendants for decisions they made while acting in their capacity as FSA directors regarding the acquisition and funding of the broker-dealer subsidiaries, and that those decisions resulted in losses to FSA. Having thoroughly considered the points raised by all parties and relevant authorities, the court concludes that the RTC has standing to assert the broker-dealer claims contained in counts IV through IX of the complaint, to the extent that such claims are based on breaches of duty to FSA by defendants while acting in their capacity as FSA directors. Accordingly, defendants' motion for summary judgment on those claims is denied.

## II. Factual Background

Franklin Savings Association ("FSA") was a creature born of the deregulation of the savings and loan industry in the 1980's. In June of 1985, FSA was a sleepy thrift based in Ottawa, Kansas with assets of approximately $2.0 billion. However, by June of 1988, through the aggressive leadership of Ernest M. Fleischer and by branching out into a multitude of nontraditional thrift investments, FSA's total assets had grown to approximately $13.4 billion, making FSA the largest savings and loan association in the state of Kansas.

The parties have stipulated to the following facts. FSA is a stock savings and loan association and was at all relevant times a federally insured depository institution. At all material times, more than 90% of the outstanding stock of FSA was owned by Franklin Savings Corporation ("FSC"). FSC filed consolidated federal income tax returns which included FSA and various FSA subsidiaries, including Franklin Financial Services, Inc. ("FFS").

FFS was incorporated in the state of Kansas on February 16, 1984. All of the outstanding stock of FFS was, at all relevant times, owned by FSA. FFS was a service corporation for FSA. FFS owned a number of subsidiaries, including Franklin Acquisition Company, Inc.; Underwood, Neuhaus & Company, Inc.; L.F.R. Acquisition Company, Inc.; Franklin Mortgage Capital Corporation; Franklin Insurance Agency, Inc.; Savers Life Insurance Company of America; Savers Property & Casualty Insurance Company; and Franklin Finance, Inc. At all relevant times, Duane H. Hall was the sole director of FFS. During this same period, Mr. Hall was also the president of FSA and a member of its board of directors. From 1986 to 1988 FFS acquired three broker-dealer subsidiaries. It is the counts relating to losses suffered from the acquisition of these three broker-dealer subsidiaries that are the subject of defendants' motion for summary judgment.

At a September 17, 1986 meeting, the board of directors of FSA discussed the possible acquisition of Stern Brothers & Company ("Stern Brothers"). On November 6, 1986, Franklin Acquisition Company, Inc., a wholly-owned subsidiary of FFS, was formed for the purpose of acquiring Stern Brothers. Ernest M. Fleischer was the sole director of Franklin Acquisition Company, Inc. Mr. Fleischer was a member of the board of directors of FSA. Mr. Fleischer was not a director, officer or employee of FFS.

On November 14, 1986, Mr. Fleischer, as the sole director of Franklin Acquisition Company, Inc., authorized the execution of the asset purchase agreement with Stern Brothers. On November 26, 1986, Franklin Acquisition Company, Inc. acquired certain assets and certain liabilities of Stern Brothers pursuant to an asset purchase agreement. The name of Franklin Acquisition Company, Inc. was changed to Stern Brothers & Company on December 5, 1986. The corporation is now known as LM Consolidated Financial Corp.

At a March 25, 1987 meeting, the board of directors of FSA discussed the possible ac-

quisition of Underwood, Neuhaus Corporation, an investment banking firm in Houston, Texas. After a thorough discussion, the FSA board of directors unanimously voted that negotiations with Underwood, Neuhaus be conducted with the intent that negotiations reach an agreement to purchase the investment banking firm with all necessary regulatory approvals.

On June 3, 1987, Duane H. Hall, as the sole director of FFS, authorized the execution of an asset purchase agreement with Underwood, Neuhaus Corporation. On June 10, 1987, Mr. Hall, again in his capacity as the sole director of FFS, approved a motion that FFS, as sole shareholder of Underwood, Neuhaus & Company, Inc. (a wholly-owned subsidiary of FFS created for the purpose of acquiring Underwood, Neuhaus Corporation), approve the asset purchase agreement with Underwood, Neuhaus Corporation. On July 31, 1987, Underwood, Neuhaus & Co., Inc. acquired certain assets and assumed certain liabilities of Underwood, Neuhaus Corporation and certain of its subsidiaries pursuant to an asset purchase agreement entered into by FFS, Underwood, Neuhaus & Co., Inc., and Underwood, Neuhaus Corporation. Underwood, Neuhaus & Co., Inc. is now known as 909 Corporation.

At a February 21, 1988 meeting of the FSA board of directors the FSA directors discussed an opportunity for Stern Brothers to acquire L.F. Rothschild, a major investment banking company located in New York. After two and one-half hours of deliberation by the FSA board of directors and the Stern Brothers board of directors a motion passed unanimously that the FSA board of directors approve the purchase of the L.F. Rothschild investment banking firm and merger into Stern Brothers.

On February 21, 1988, Duane H. Hall, as the sole director of FFS, authorized the purchase of a L.F. Rothschild & Co., Inc. $30 million floating rate senior subordinated note by FFS. On February 22, 1988, L.F. Rothschild & Co., Inc. issued its note to FFS in consideration of a $30 million loan by FFS to Rothschild. The note was purchased pursuant to a February 22, 1988 letter of intent between Franklin Savings Corporation, Stern Brothers & Co., L.F. Rothschild Holdings, Inc., and L.F. Rothschild & Co., Inc. which provided that, upon the occurrence of certain events, FFS could exchange the $30 million note for 51% of Rothschild's common stock.

At an April 10, 1988 meeting of the FSA board of directors, the possible acquisition of L.F. Rothschild was again discussed. A motion was passed that a definite agreement be signed for the acquisition of L.F. Rothschild with all FSA directors voting in favor of the motion with the exception of Mary Louise Greene, who voted "no". Following this meeting, pursuant to the February 22, 1988 letter of intent and an April 12, 1988 merger agreement between FFS, L.F.R. Acquisition Company, L.F. Rothschild Holdings, Inc. and L.F. Rothschild & Co., Inc., L.F. Rothschild Holdings, Inc. was merged into L.F.R. Acquisition Company, Inc., a wholly-owned subsidiary of FFS.

All the funds which were used to purchase the assets of Stern Brothers and Underwood, Neuhaus, to purchase the L.F. Rothschild subordinated note, and to make additional equity investments and unpaid loans in these companies, which funds the RTC seeks to recover in counts IV–IX of the complaint, came from an FFS account.

### III. Summary Judgment Standards

■ A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

 The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

*IV. Discussion*

In counts IV–IX of the complaint, the RTC asserts claims against former directors of FSA for alleged breaches of duty to FSA and resulting damages to FSA arising from the acquisition, management and control of the three broker-dealer subsidiaries. Among other things, the complaint alleges that the defendants failed to perform adequate due diligence of the legal and business matters of the broker-dealer subsidiaries prior to their acquisition, that they failed to obtain independent appraisals prior to the acquisitions, that they did not prepare and thoroughly analyze and review business plans for the broker-dealer subsidiaries, and that they failed to fulfill their duty to position effective management at the broker-dealer subsidiaries following their acquisition. Counts IV–IX of the complaint consist of claims for breach of fiduciary duty, negligence, negligence per se and breach of implied contract against the defendants for these alleged failures.

 In their motion for summary judgment, defendants contend that the plaintiff RTC does not have standing to assert the claims contained in counts IV–IX of the complaint. Defendants contend that the RTC is seeking in those counts to recover monies expended by FFS, a separate subsidiary of FSA, to make certain investments and loans and that any claim for alleged losses arising out of those investments belongs to FFS. Defendants argue that as receiver of FSA, the RTC has no standing to assert those claims contained in Counts IV–IX because those claims belong to FFS. In support of their argument, defendants contend that the uncontroverted facts show that Stern Brothers and Underwood, Neuhaus were acquired by wholly-owned subsidiaries of FFS with funds from an FFS account and that the $30 million Rothschild note was purchased by FFS with its own funds.

Defendants contend that the RTC has brought this suit in its capacity as assignee of FSA and as conservator of Franklin Federal Savings Association [2] and that in those capacities, the RTC has only the "rights, titles, powers and privileges of FSA." Defendants further note that the RTC is not the receiver, conservator or assignee of FFS, nor is the RTC the receiver, conservator or assignee of any of the broker-dealer subsidiaries. Defendants therefore contend that the claims asserted by the RTC in Counts IV–IX belong solely to FFS or the broker-dealer subsidiaries, and because FSA would have no right to bring the claims in its own name, neither does the RTC.

 Defendants rely on a general tenet of corporate law that a shareholder of a corporation possesses no personal or individual

---

**2.** Franklin Federal Savings Association was a new federal mutual association created to assume all deposits and certain assets and secured liabilities of FSA.

right of action for injury to the corporation, even an injury which reduces the corporation's net worth, because the injury suffered by the shareholder is merely incidental to the injury suffered by the corporation. As Judge Belot of this court has stated: "[i]t is well settled that a shareholder does not have standing to redress an injury to a corporation in which it holds stock." *Comeau v. Rupp*, 810 F.Supp. 1127, 1153 (D.Kan.1992), *quoting K–B Trucking Co. v. Riss Intern. Corp.*, 763 F.2d 1148, 1154, n. 7 (10th Cir. 1985). Defendants continue their argument by stating that it is black letter law that claims for redress of injuries belong solely to the injured corporation. *See e.g., Whalen v. Carter*, 954 F.2d 1087 (5th Cir.1992); *In re Sunrise Securities Litigation*, 916 F.2d 874 (3d Cir.1990); *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838 (9th Cir.1976). The fact that FSA owned all of the stock of FFS, defendants argue, does not give the RTC any greater right to sue for losses suffered by FFS or the corporations owned by FFS. Those losses were still suffered by the subsidiary corporations, not the shareholders, and any cause of action belongs to those corporations, not to FSA as shareholder of FFS. *See e.g., Canderm Pharmacal, Ltd, v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597 (6th Cir.1988); *McDonald v. Bennett*, 674 F.2d 1080 (5th Cir.1982); *Erlich v. Glasner*, 418 F.2d 226 (9th Cir.1969).

The court agrees with the basic tenets of corporate law set forth by defendants in their motion for summary judgment. However, the court does not find that the RTC is barred to bring the claims asserted in Counts IV–IX of the complaint due to lack of standing. In those counts, the RTC is not asserting claims as a shareholder of the subsidiary corporations. Rather, the RTC is asserting claims against FSA's directors for alleged breaches of duty to FSA by those directors in their actions regarding the acquisition, funding and control of the three broker-dealer subsidiaries.

Under Kansas law, directors of a corporation are charged with the duty of managing its affairs honestly and in good faith and must discharge the duties of their office in a non-negligent manner. The standard by which conduct of a director of a corporation is to be judged is that measure of attention, care and ability that an ordinary director of a corporation of a similar kind would reasonably and properly be expected to bestow upon affairs of the corporation. *See Sampson v. Hunt*, 233 Kan. 572, 665 P.2d 743 (1983); *Speer v. Dighton Grain, Inc.*, 229 Kan. 272, 624 P.2d 952 (1981). Directors are liable to corporations for losses resulting from their malfeasance, misfeasance or their failure or neglect to discharge duties imposed by their offices. *Id.* In determining the scope of a particular director's responsibilities, the court must consider all the facts, including the nature of the corporation and the degree of attention and care that ordinary directors of like corporations would be expected to devote to the corporation's affairs. *See Federal Sav. & Loan Ins. Corp. v. Huff*, 237 Kan. 873, 879, 704 P.2d 372 (1985). The corporation in this case is a savings and loan association, whose officers and directors are held to a heightened standard of conduct even among the general class of corporate officers. *See Comeau v. Rupp.*, 810 F.Supp. 1127, 1148 (D.Kan.1992); *Huff*, 237 Kan. at 879–80, 704 P.2d 372.

A number of cases have been brought against savings and loan directors based on a negligence theory under Kansas law. *See, e.g., Federal Sav. & Loan Ins. Corp. v. Huff*, 237 Kan. 873, 704 P.2d 372 (1985); *Resolution Trust Corp. v. Thomas*, 837 F.Supp. 354 (D.Kan.1993); *Federal Deposit Ins. Corp. v. Benjes*, 815 F.Supp. 1415 (D.Kan.1993); *Resolution Trust Corp. v. Scaletty*, 810 F.Supp. 1505 (D.Kan.1992); *Federal Deposit Ins. Corp. v. Ashley*, 749 F.Supp. 1065 (D.Kan. 1990). For example, in *Huff*, the Federal Savings and Loan Insurance Corporation ("FSLIC") brought an action against various former officers and directors of North Kansas Savings and Loan Association ("NKSA") seeking recovery of damages for economic loss sustained by NKSA in connection with the making of certain allegedly improvident loans which resulted in the collapse of the institution. The gravamen of the complaint was that the individual defendants breached their duties in failing to protect the assets and economic viability of NKSA and in undertaking (or failing to prevent) numerous

unsound and unlawful transactions engaged in by NKSA. *Huff,* 237 Kan. at 875, 704 P.2d 372.

■ Similarly, in a case interpreting Oklahoma law, the Tenth Circuit found that, as part of their duties, directors must exercise care in managing and protecting the assets of a savings and loan, including the making and monitoring of investments by the institution. *See Hoye v. Meek,* 795 F.2d 893, 895–96 (10th Cir.1986). Based on this court's analysis of Kansas law, in which the obligations of directors are similar to those set forth under Oklahoma law, and in particular the *Huff* case, which dealt with the directors' undertaking (or failure to prevent) improvident loans, the court finds that Kansas law would impose the same duty on savings and loan directors regarding the making and monitoring of investments as is contained in *Hoye.*

In this case, the RTC is suing FSA directors on breach of fiduciary duty and negligence theories. Although defendants assert that the RTC impermissibly seeks to recover damages for losses suffered by subsidiary companies based solely on its status as sole shareholder of those subsidiary companies, upon analyzing the claims as set forth in the complaint the court does not find this to be the case. In Counts IV–IX the RTC is attempting to pursue the directors of FSA for breaches of their duties to FSA through wrongful conduct in the acquisition, management and control of the broker-dealer subsidiaries, and alleges damages to FSA in the form of direct or indirect transfers of FSA funds that were lost through the various transactions.

In its complaint, the RTC alleges that FSA *caused* its wholly-owned subsidiary, FFS, to acquire the three broker-dealer subsidiaries. The RTC has alleged, and has produced evidence that would tend to show, that the FSA board of directors made funding decisions with respect to the broker-dealers, both as to their initial acquisition and subsequent cash infusions. The RTC further contends that all decisions involving acquisition or funding of the broker-dealer subsidiaries were made at the FSA board level, and that FFS made no independent decisions regarding the ac-

quisition or funding of the broker-dealers. Additionally, although the parties have stipulated that the funds which were used to purchase the broker-dealer subsidiaries, and to make additional equity investments and loans to the subsidiaries, came from an FFS account, the RTC points to deposition testimony of one of the corporate defendants that in fact the broker-dealer acquisitions "involved the payment of cash by the entity that acquired [the broker-dealer], which cash would have come directly from Franklin Savings." The RTC presents further evidence that on the very day FFS completed the loan to L.F. Rothschild, a direct transfer of $11 million was made from FSA to FFS. In other words, the conduct which the RTC criticizes and for which it seeks to hold the defendants responsible involves the decisions to commit FSA's funds which passed through FFS to the ultimate investments.

Basically, the RTC asserts that it was the FSA board that was the engine that drove the broker-dealer acquisitions and that the monies for the purchase and ongoing operations of the subsidiaries came directly from FSA. If indeed that is the factual reality, FSA clearly has a cause of action against its directors if they breached duties owed to FSA in making those decisions. The court sees this as analogous to the situation in *Hoye v. Meek,* 795 F.2d 893 (10th Cir.1986), in that a director has a duty of care regarding the making and monitoring of investment decisions. The court believes this duty would apply whether those investments be in securities, as was the case in *Hoye,* or whether those investments be in acquiring and funding subsidiary broker-dealer corporations, as in the present case.

In their reply, defendants contend that in this case the RTC is attempting to hold the various defendants liable for breaches of duties owed to the subsidiary corporations, not FSA. Defendants argue that the mere fact that some FSA directors served on the boards of the subsidiaries should not render them liable to FSA for breach of duties owed to the subsidiary corporations. Defendants point specifically to paragraph 103 of the complaint, in which the RTC alleges that the failure of the FSA board of directors to

establish adequate policies and procedures with respect to the management and operation of Underwood, Neuhaus fostered several serious problems, including "payment by Underwood of unauthorized management bonuses." Defendants argue that if Mr. Fleischer, acting as a director of Underwood, Neuhaus, allowed payment of an unauthorized bonus to Underwood management as alleged in paragraph 103, Underwood, Neuhaus might hold him accountable, but FSA and FFS could not.

The court wishes to emphasize that its ruling here in no way allows for the dire scenario envisioned by defendants. The court's ruling does not give the RTC standing to pursue a defendant on the basis that he or she acted negligently in regards to his or her duties as a director of one of the subsidiary corporations. Rather, the court finds that the RTC has standing to pursue its allegations that the FSA directors were negligent in authorizing the acquisition and continued funding of the broker-dealer subsidiaries. Such standing results from the broad responsibility of a director regarding the making and monitoring of investment decisions. For example, defendants may be liable if the RTC can show that the FSA directors were indeed responsible for the acquisition of the subsidiaries and did so in a negligent manner or if the RTC shows that at some point it became clear that continued funding of the subsidiaries should cease and yet the defendants negligently or in breach of their fiduciary duty failed to take proper actions. The court's ruling does not allow the RTC to pursue a defendant for any alleged negligent act or breach of duty that occurred solely in that defendant's capacity as a director of one of the subsidiary corporations. Thus, with regard to the claim made in paragraph 103 of the complaint, the plaintiff must show that the defendant was acting in his capacity as an officer or director of FSA in order to put the challenged conduct at issue.

 Defendants make an additional argument that even if they breached a duty owed directly to FSA, FSA still would have no standing to sue in its own name unless it suffered an injury over and above a diminution in the value of its investment in the subsidiary corporation. The court has reviewed the authorities cited by defendants for this proposition and finds that they do not apply to the present situation. The authorities cited by defendants all involve situations in which a shareholder attempted to sue directors or officers of a corporation, or third persons, solely on the basis that the actions of those persons had caused the value of the shareholder's stock in that corporation to decrease. The cases do not involve a breach of any separate duty owed to the shareholder.[3] None of the cases involve a situation such as the present case, in which a party, who is in fact in the shoes of a corporation which in turn is a shareholder of a subsidiary corporation, is asserting a claim for a breach of a duty by the directors owed specifically to the party's corporate predecessor in interest. The court finds that the mere fact that the method of computing FSA's alleged damages in this case will necessarily involve a calculation of the diminution of FSA's investment in the subsidiary corporations does not deprive FSA of its ability to assert its claims against the defendants.

### V. Conclusion

IT IS, THEREFORE, BY THE COURT ORDERED THAT defendants' motion for summary judgment on counts IV–IX (Doc. # 205) is denied.

**IT IS SO ORDERED.**

---

**3.** *See, e.g., Warren v. Manufacturers Nat. Bank of Detroit,* 759 F.2d 542, 544 (6th Cir.1985); *Stevens v. Lowder,* 643 F.2d 1078, 1080 (5th Cir. 1981); *Comeau v. Rupp,* 810 F.Supp. 1127, 1153 (D.Kan.1992).