No. 57,932

FEDERAL SAVINGS & LOAN INSURANCE CORPORATION, As Receiver for North Kansas Savings Association, *Plaintiff*, v. HOWARD D. HUFF, *et al.*, *Defendants*.

(704 P.2d 372)

Opinion filed July 26, 1985.

*Daniel Bukovac*, of Watson, Ess, Marshall & Enggas, of Kansas City, Missouri, argued the cause, and *Rolland J. Exon*, of the same firm, of Olathe, attorneys for defendant Donald R. Pierce; *R. Kent Sullivan*, of Payne & Jones, Chartered, of Overland Park, attorneys for defendants William C. Chaffee, Gertrude Erickson, Charles Fleming and Robert Johnson; *Charles White Hess*, of Linde Thomson Fairchild Langworthy Kohn & Van Dyke, P.C., of Overland Park, and *Albert Thomson*, of the same firm, of Kansas City, Missouri, attorneys for defendant Howard D. Huff; and *Richard E. McLeod*, of Shook, Hardy & Bacon, of Kansas City, Missouri, and *Thomas R. Buchanan*, of the same firm, of Overland Park, attorneys for defendants Mark Eaton, John Highland and Pat Waggoner, were with him on the briefs for defendants.

*Alan V. Johnson*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, argued the cause, and *Gregory J. Bien*, of the same firm, was with him on the briefs for defendant Fidelity & Deposit Company of Maryland.

*P. John Owen*, of Morrison, Hecker, Curtis, Kuder & Parrish, of Kansas City,

Missouri, argued the cause, and *Nancy L. Shelledy*, of the same firm, and *A. Bradley Bodamer*, of the same firm, of Overland Park, and *Norman H. Raiden*, general counsel, *Ralph W. Christy*, deputy general counsel, *William K. Black*, associate general counsel, and *Dorothy L. Nichols*, trial attorney, Federal Home Loan Bank Board, of Washington, D.C., were with him on the briefs for plaintiff.

*Robert T. Stephan*, attorney general, and *Jeffrey S. Southard*, deputy attorney general, were on the *amicus curiae* brief for the Attorney General of Kansas.

*Julia L. Young*, general counsel, was on the *amicus curiae* brief for the Kansas Banking Department.

The opinion of the court was delivered by

McFARLAND, J.: The case comes before us on a certification from the United States District Court for the District of Kansas under the authority of the Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.*

The two certified questions are:

1. DOES THE COMPARATIVE NEGLIGENCE STATUTE, K.S.A. 60-258a, APPLY TO AN ACTION FOR ECONOMIC LOSS BROUGHT BY THE RECEIVER OF A SAVINGS AND LOAN ASSOCIATION AGAINST INDIVIDUAL OFFICERS AND DIRECTORS OF THE ASSOCIATION FOR NEGLIGENT BREACH OF FIDUCIARY DUTIES UNDER BOTH THE COMMON LAW AND THE STATUTORY LAW?

2. IF THE COMPARATIVE NEGLIGENCE STATUTE, K.S.A. 60-258a, IS NOT APPLICABLE, CAN THE DEFENDANTS STATE VALID IMPLIED INDEMNITY, SUBROGATION, AND/OR CONTRIBUTION CLAIMS AGAINST OTHER PERSONS INVOLVED IN THE TRANSACTIONS AT ISSUE?

North Kansas Savings and Loan Association (NKSA) was a state chartered but federally insured savings and loan association situated in Beloit, Kansas. NKSA became insolvent and the Federal Home Loan Bank Board appointed the Federal Savings and Loan Insurance Corporation (FSLIC) receiver for the institution. FSLIC, in its receivership capacity, brought this action against various former officers and employees of NKSA seeking recovery of damages for economic loss sustained by NKSA in connection with the making of certain allegedly improvident loans which had resulted in the collapse of the institution. The defendants and their connection to the litigation are as follows: (1) Howard D. Huff—Chairman of NKSA's Board of Directors,

its executive officer and a member of its Executive Committee;

(2) Donald R. Pierce—NKSA's President, a member of its Board of Directors and Executive Committee;

(3) William C. Chaffee, Gertrude Erickson, Charles Fleming, and Robert Johnson—members of NKSA's Board of Directors;

(4) Mark Eaton, John Highland, and Pat G. Waggoner—officers of NKSA serving on its Loan Committee; and

(5) Fidelity & Deposit Company of Maryland—underwriter of a fidelity bond to indemnify NKSA from losses to it resulting from dishonest and fraudulent acts of officers and employees (sued by virtue of a count alleging dishonest and fraudulent acts of defendant Huff).

Specifically, plaintiff FSLIC contends the individual defendants breached their fiduciary duties in failing to protect the assets and economic viability of NKSA and in undertaking (or failing to prevent) numerous unsound and unlawful transactions engaged in by NKSA. The transactions of which FSLIC complains are described by it as follows:

(1) On November 4, 1981, with the approval of the directors, NKSA loaned $2,270,000 to Grandpa John's, Inc. (an Illinois corporation operating discount department stores in southern Illinois), at a time when its (NKSA's) net worth was approximately $1,212,815 and received as collateral first mortgages on six commercial properties whose market value was $1,650,000 or less;

(2) On March 9, 1982, with the approval of the directors, NKSA loaned $1,200,000 to Orient Coal Trust II (an Illinois land trust newly organized to engage in recovery of coal from refuse coal gob and tailings) at a time when its (NKSA's) net worth was approximately $1,111,511 and received as collateral a first mortgage on unimproved real property (the site of the refuse) whose market value was less than $175,000;

(3) Beginning in 1981, NKSA loaned the Double Cee syndicate of investors money to finance the lease of a cruise ship; these loans were refinanced in June, 1982, with the approval of the directors; the aggregate amount of all loans was $1,200,000 at a time when NKSA's net worth was approximately $1,143,982;

NKSA was given as collateral a certificate of deposit in a nonexistent bank purportedly in the British West Indies;

(4) Beginning in August, 1981, and continuing to June 1, 1982, with the approval of the directors, NKSA loaned $2,108,750 to Citation, Inc. (a Minnesota corporation with a negative net worth of $350,000), and its affiliates or nominees and received first mortgages on six properties in Minnesota whose market value was $795,000 or less; NKSA's net worth on June 1, 1982, was approximately $1,143,982;

(5) On July 12, 1982, at the direction of Huff and Pierce, NKSA loaned Heinz Weimhoff $170,000 without collateral and without requiring him to execute a note evidencing his receipt of and obligation to repay these funds; and

(6) On July 15, 1982, with the approval of the directors, NKSA loaned $11,000,000 to United Development Corporation (a Colorado corporation newly organized to purchase and develop ranch property in Colorado and Utah) at a time when its (NKSA's) net worth was approximately $1,127,329; NKSA received a second mortgage on the ranch property, whose market value was less than $3,500,000 and which was encumbered by a first mortgage with an outstanding loan balance of $1,431,873.

Of the above six transactions, no payments of principal or interest were made on four and one payment of interest and principal was made on the remaining two. These transactions allegedly caused NKSA's insolvency and are alleged to have been unsafe and unsound practices entered into in violation of federal rules and regulations.

Defendants seek to have their respective negligence compared to each other as well as to certain nondefendants (borrowers, guarantors, and appraisers). As stated by plaintiff FSLIC, "[D]efendants want to compare themselves to the six borrowers to whom loans should not have been extended, to guarantors whose guarantees were not credit worthy, and to appraisers selected by the defaulting borrowers instead of, as required, by the directors of NKSA."

This brings us to the first certified question (hereinafter reiterated for convenience):

DOES THE COMPARATIVE NEGLIGENCE STATUTE, K.S.A. 60-258a, APPLY TO AN ACTION FOR ECONOMIC LOSS BROUGHT BY THE RECEIVER OF A SAVINGS AND LOAN ASSOCIATION AGAINST INDIVIDUAL OFFICERS

AND DIRECTORS OF THE ASSOCIATION FOR NEGLI-
GENT BREACH OF FIDUCIARY DUTIES UNDER BOTH
THE COMMON LAW AND THE STATUTORY LAW?

It is the position of plaintiff FSLIC that this question should be answered in the negative on the basis that violation of federal law is asserted in the action and state law is therefore inapplicable. The petition filed herein alleges violation of federal and state statutory law as well as the common law. In this certified question we are asked to determine a specific question under Kansas law. We believe the issue raised by plaintiff is outside the purview of the certified question.

We turn now to the discussion of this certified question on its merits.

K.S.A. 60-258a provides:

"(a) The contributory negligence of any party in a civil action shall not bar such party or said party's legal representative from recovering damages for negligence resulting in death, personal injury or property damage, if such party's negligence was less than the causal negligence of the party or parties against whom claim for recovery is made, but the award of damages to any party in such action shall be diminished in proportion to the amount of negligence attributed to such party. If any such party is claiming damages for a decedent's wrongful death, the negligence of the decedent, if any, shall be imputed to such party.

"(b) Where the comparative negligence of the parties in any such action is an issue, the jury shall return special verdicts, or in the absence of a jury, the court shall make special findings, determining the percentage of negligence attributable to each of the parties, and determining the total amount of damages sustained by each of the claimants, and the entry of judgment shall be made by the court. No general verdict shall be returned by the jury.

"(c) On motion of any party against whom a claim is asserted for negligence resulting in death, personal injury or property damage, any other person whose causal negligence is claimed to have contributed to such death, personal injury or property damage shall be joined as an additional party to the action.

"(d) Where the comparative negligence of the parties in any action is an issue and recovery is allowed against more than one party, each such party shall be liable for that portion of the total dollar amount awarded as damages to any claimant in the proportion that the amount of his or her causal negligence bears to the amount of the causal negligence attributed to all parties against whom such recovery is allowed."

FSLIC makes several persuasive arguments as to why this certified question should be answered in the negative.

(a) *Does the absence of contributory negligence as a defense in this case bar application of K.S.A. 60-258a?*

Plaintiff FSLIC as receiver for NKSA stands in the shoes of the savings and loan institution. NKSA is a corporation and, accord-

ingly, can only act through its officers and directors. Here the institution seeks to recover economic loss sustained by it as a result of the institution's mismanagement by its officers. It is legally impossible for NKSA to be contributorily negligent in such litigation and, accordingly, contributory negligence is a defense unavailable to the individual defendants herein. The action against the defendant underwriter of the fidelity bond is, of course, predicated upon contract law and K.S.A. 60-258a is inapplicable to suits on contracts. See *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 666 P.2d 192 (1983).

This court has consistently held that if contributory negligence or an analogous defense would not have been a defense to a claim, the comparative negligence statute (K.S.A. 60-258a) does not apply. *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635; *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, 610 P.2d 1107 (1980). Defendants liken the legal inability of NKSA to have been contributorily negligent to legal inability of a young child to be held contributorily negligent, noting *Lester v. Magic Chef, Inc.*, 230 Kan. 643, 641 P.2d 353 (1982), wherein comparative negligence principles were applied even though the two-and-one-half-year-old injured plaintiff was legally incapable of being contributorily negligent. We do not find this analogy persuasive. A child of tender years cannot be guilty of negligence by virtue of its lack of responsibility even when the same act, if done by an adult, could constitute negligence. In the action before us, NKSA (through its receiver) is suing the only individuals who could act for it in its management alleging, in essence, that it was destroyed through its officers' mismanagement of the affairs. That is, the officers charged with managing NKSA breached their fiduciary duties to it and caused the collapse of the institution. The action is, in a sense, wholly intramural.

We conclude the absence of contributory negligence as a defense in this case bars the application of comparative negligence (K.S.A. 60-258a).

*(b) Is K.S.A. 60-258a inapplicable herein by virtue of the fact the receiver seeks damages solely for economic loss?*

By its express language, K.S.A. 60-258a is restricted to actions seeking "damages for negligence resulting in death, personal injury or property damage." Generally speaking, the measure of damages to real or personal property is the difference in value

immediately before and after the destruction or damage. *Ettus v. Orkin Exterminating Co.,* 233 Kan. 555, 561, 665 P.2d. 730 (1983). Obviously such a measure of damages is inappropriate to the action before us wherein plaintiff seeks recovery of the principal amounts loaned plus interest and other expenses related to the loans. While we decline to hold that a claim seeking damages solely for economic loss can never be within the purview of K.S.A. 60-258a, we have no hesitancy in concluding an action of the nature before us, that is, an action seeking damages for economic loss to a savings and loan institution resulting from breach of fiduciary duty by its officers, is beyond the purview of K.S.A. 60-258a.

*(c) Does the statutory law and public policy of Kansas require joint and several liability rather than proportional fault be applied to the cause of action herein?*

The Kansas case law relating generally to the fiduciary duty owed by a corporate officer is summarized in Sampson v. Hunt, 233 Kan. 572, 665 P.2d 743 (1983), as follows:

"A strict fiduciary duty is imposed on officers and directors of a corporation to act in the best interest of the corporation and the stockholders. The duty imposed by this position of trust requires an officer or director to work for the general interests of the corporation. *Newton v. Hornblower, Inc.,* 224 Kan. at 514; *Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 256, Syl. ¶ 2, 531 P.2d 428 (1975); 18 Am. Jur. 2d, Corporations § 497. The standard of duty by which the conduct of a director of a corporation is to be judged should be that measure of attention, care, and ability which the ordinary director and officer of corporations *of a similar kind* would be reasonably and properly expected to bestow upon the affairs of the corporation. *Speer v. Dighton Grain, Inc.,* 229 Kan. 272, 276, 624 P.2d 952 (1981). Directors and officers are liable to the corporation and the stockholders for losses resulting from their malfeasance, misfeasance or their failure or neglect to discharge the duties imposed by their offices. 229 Kan. 272, Syl. ¶ 8." 233 Kan. at 584. (Emphasis supplied.)

As noted in the emphasized citation from *Sampson v. Hunt,* the standard of duty in judging the conduct of a corporate officer is directly related to the kind of corporation he or she serves. Even a cursory review of the Kansas statutes relative to corporations establishes the legislative intent is to place higher standards of duty on savings and loan institution officers than on officers of ordinary for profit corporations. The following examples illustrate this point:

First, although K.S.A. 17-6301(a) imposes the duty on the board of directors to manage a for profit corporation, K.S.A.

17-6301(e) allows a director to rely "in good faith upon the books of account or reports made to the corporation by any of its officers . . . or by an appraiser selected with reasonable care . . . or in relying in good faith upon other records of the corporation." See also K.S.A. 17-6422. The Savings and Loan Code (K.S.A. 17-5101 *et seq.*), however, while providing in K.S.A. 17-5311 for a duty comparable to K.S.A. 17-6301(a), does not have any exception comparable to K.S.A. 17-6301(e) or any provision comparable to K.S.A. 17-6422. Therefore, directors of a Kansas savings and loan association do not have the statutory defense available to them that is available to their counterparts in domestic for profit corporations.

Second, K.S.A. 17-5812 provides for civil and criminal liability for officers and directors of a savings and loan association "to the extent of the damage thereby caused" the association by their unauthorized and ultra vires acts. There is no similar provision in the General Corporation Code of Kansas (K.S.A. 17-6001 *et seq.*).

Third, the statutory liabilities of directors for impairment of capital differ with respect to savings and loan associations and for profit corporations. Specifically, the directors of each type of corporation may not vote dividends which impair capital. K.S.A. 17-5412, -6420 and -6424. Under both statutory schemes, such directors are jointly and severally liable to creditors unless they dissent from the dividend declaration and have their dissent appropriately recorded. K.S.A. 17-5412 and -6424. The similarity ends at that point, however. Directors of domestic for profit corporations have a statutory right of contribution from those "who voted for or concurred in the unlawful dividend" and a statutory right of subrogation "against stockholders who received the dividend." K.S.A. 17-6424(b) and (c). The legislature has not afforded any comparable rights of contribution or subrogation to directors of savings and loan associations. Additionally, the legislature has specified that a savings and loan director who consents to the payment of an unauthorized dividend is guilty of a felony. K.S.A. 17-5412.

We glean no statutory basis for the proposition that the legislature intended that an officer of a savings and loan association could dilute his liability for his breach of fiduciary duty by application of comparative fault principles. Indeed, the contrary intent is apparent—that breach of fiduciary duty by savings and

loan officers which impairs the capital of a savings and loan institution is so serious and detrimental to the people of Kansas that joint and several civil liability is necessary.

Before concluding this point, some comments on public policy are appropriate. The potentiality for harm to Kansas citizens from mismanagement of savings and loan associations is enormous. A large percentage of their investors place their life savings in such institutions, relying upon the officers of such institutions to discharge their duties properly. When a savings and loan association fails the domino effect can be staggering. Public confidence in all savings and loans is shaken. Declining deposits in savings and loan associations have a direct effect on the construction, sale, and resale of homes, which in turn affects many other areas of our economy.

We conclude that the statutory law and public policy of Kansas require that officers of savings and loan associations who breach their fiduciary duties be subject to joint and several liability rather than have liability based on principles of comparative fault.

Conclusion on Question No. 1

We conclude the answer to certified question No. 1 is "No," based on the rationale heretofore expressed.

We turn now to the second certified question, repeated for convenience as follows:

IF THE COMPARATIVE NEGLIGENCE STATUTE, K.S.A. 60-258a, IS NOT APPLICABLE, CAN THE DEFENDANTS STATE VALID IMPLIED INDEMNITY, SUBROGATION, AND/OR CONTRIBUTION CLAIMS AGAINST OTHER PERSONS INVOLVED IN THE TRANSACTIONS AT ISSUE?

As previously noted, defendants are attempting to broaden the liability base by drawing in borrowers, guarantors, and appraisers. This has been done by seeking application of comparative fault principles (rejected in certified question No. 1), and by seeking to commence third-party practice proceedings against such other persons (the request being denied by the district court).

The district court's statement of relevant facts (required by K.S.A. 60-3203 to be included in the order of certification) relates wholly to certified question No. 1. A copy of the petition filed in

the district court by FSLIC reflects its claims against the officers are predicated upon such acts as: (1) accepting appraisal reports from borrowers, contrary to the requirement that NKSA must select appraisers (K.S.A. 17-5504), and failing to approve appraisers, contrary to 12 C.F.R. § 563.17-1(c)(1)(iii) (1985); (2) accepting insolvent guarantors; and (3) making loans with obviously inadequate collateral. The doctrine of implied indemnity is conditioned on a defendant having to pay what another ought to pay (*Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. at 642), or on the old concept of active-passive negligence which seeks to make the more culpable party bear the ultimate loss (see *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788 [1980]). In viewgof the statutory duties imposed uon directors of savings and loan associations and the strong public policy consideration behind the same (see discussio in question No. 1), it is difficult to conceive that a valid cause of action could be stated for implied indemnity. FSLIC is seeking to hold the officers liable for the officers' individual wrongdoing—for breach of their fiduciary duties.

The Kansas law of contribution was summarized in *Brown v. Keill*, 224 Kan. 195, 580 P.2d 867 (1978), as follows:

"[I]t might be well to review some of our rules relating to the liability of joint tortfeasors under our prior case law. In *Alseike v. Miller*, 196 Kan. 547, 412 P.2d 1007 (1966), it is stated that Kansas adheres to the common law rule that there is no right of contribution between *joint tortfeasors*. Where no right of contribution exists as between joint tortfeasors, a defendant has no right under the provisions of K.S.A. 60-214(a) to bring in to plaintiff's cause of action a joint tortfeasor who was not originally made a party to the action by the plaintiff.

"However, K.S.A. 60-2413(b) provides:

" 'A right of contribution or indemnity among judgment debtors, arising out of the payment of the judgment by one or more of them, may be enforced by execution against the property of the judgment debtor from whom contribution or indemnity is sought. (Emphasis supplied.)'

"In *McKinney, Administrator v. Miller*, 204 Kan. 436, 464 P.2d 276 (1970), it was held, when a joint judgment is entered in an action founded upon tort, contribution between the joint judgment debtors is authorized by K.S.A. 60-2413(b). In *McKinney, Administrator v. Miller*, supra, this court cited the case of *Fort Scott v. Railroad Co.*, 66 Kan. 610, 72 Pac. 238 (1903), with approval. In *Fort Scott* an action was brought by one joint judgment debtor against the other joint judgment debtor. The judgment had been entered in a prior tort action brought against the two joint tortfeasors. The plaintiff in the Fort Scott action had previously paid the entire joint judgment entered against the tortfeasors. A judgment for one-half the amount paid was recovered from the other joint judgment debtor.

"Therefore, under the Kansas law as it existed prior to statutory comparative negligence a plaintiff could choose his tortfeasor and a defendant had no right to bring in another joint tortfeasor to plaintiff's action. However, if plaintiff sued and recovered a judgment against two tortfeasors plaintiff could proceed to collect the judgment from either judgment debtor. When one judgment debtor had satisfied the entire judgment he could then recover one-half of the amount paid from the other judgment debtor. The effect of these prior holdings was to make each defendant jointly and severally liable for all of plaintiff's damage regardless of whether others contributed to cause such injuries. The right of contribution between judgment debtors in such case was on a fifty-fifty basis. Plaintiff controlled his own lawsuit and could collect a judgment from any judgment debtor he chose. The inability of any judgment debtor to pay his half of the judgment would concern only the judgment debtor who satisfied the judgment and then sought contribution." 224 Kan. at 197-98.

*Keill* went on to conclude where comparative negligence applies, even the limited contribution previously permitted was inapplicable.

The "other persons" herein are not parties and, accordingly, cannot become joint judgment debtors. Therefore, even if the Kansas limited concept of contribution were applicable to tortfeasors not subject to comparative fault principles, it would not be applicable to the "other persons" herein.

As to subrogation, this concept is inapplicable until and unless defendants have paid a debt for which another is primarily responsible and such payment must generally be in full discharge of that party's obligation. Mere liability to pay is not ordinarily enough for one to be substituted to the rights of the creditor. *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635. Accordingly, defendants have no present right of subrogation.

### Conclusion on Question No. 2

Based on the limited facts before us, we conclude the answer to certified question No. 2 is "No."