**RESOLUTION TRUST CORPORATION, Plaintiff,**

v.

**Ernest M. FLEISCHER, et al., Defendants.**

**No. 93–2062–JWL.**

United States District Court, D. Kansas.

June 6, 1995.

H. David Barr, Charles J. Williams, Gage & Tucker, Overland Park, KS, William L. Turner, Bernard J. Rhodes, R. Kent Sellers, Jeffrey M. Pfaff, Mike L. Racy, Jean Paul Bradshaw, II, Gage & Tucker, Kansas City, MO, Mira N. Marshall, Resolution Trust Corp., Legal Div.—Prof. Liability Section, Washington, DC, Robert H. Plotkin, Resolution Trust Corp., Professional Liability Section, Washington, DC, and Andrea J. Goetze, N.L.R.B., New Orleans, LA, for plaintiff.

James Borthwick, Michael Thompson, Christopher A. Koster, J. Randall Coffey, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, Brian C. Fries, Kenner & James, P.C., Kansas City, MO, Renana B. Abrams, Thomas H. Stahl, Jennifer P. Kyner, Arm-

strong, Teasdale, Schlafly & Davis, Kansas City, MO, Kathleen A. Hardee, Gilliland & Hayes, P.A., Kansas City, MO, Robert P. Wray, Armstrong, Teasdale, Schlafly & Davis, Olathe, KS, John R. Toland, Toland & Thompson, Iola, KS, Delton M. Gilliland, Coffman, Jones & Gilliland, Lyndon, KS, Richmond M. Enochs, Francis R. Peterson, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, Thomas E. Gleason Jr., Thomas E. Gleason, Chartered, Ottawa, KS, and Greer S. Lang, and Leonard B. Rose, Rose, Brouillette & Shapiro, P.C., Kansas City, MO, for defendants.

Thomas R. Weigand, Ottawa, KS, defendant pro se.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

## I. INTRODUCTION

This matter is currently before the court on the following motions: the motion of defendants Ernest M. Fleischer, et al., for summary judgment on Counts I, II and III of plaintiff's first amended complaint (Doc. # 254); the motion of defendant Ted Greene, Jr. for summary judgment on Counts I, II and III of plaintiff's first amended complaint (Doc. # 320); the motion of defendants Fleischer, et al., on Counts IV, V and VI based upon the statute of limitations (Doc. # 322); and on the motion of various defendants for summary judgment based on new law (Doc. # 373). These motions have remained pending for over a year in anticipation of two opinions of the Kansas Supreme Court upon certified questions by this court and the Tenth Circuit Court of Appeals affecting various claims of the plaintiff, Resolution Trust Corporation ("RTC"), and the corresponding motions for summary judgment. The Kansas Supreme Court has recently issued those opinions and the parties have had an opportunity to present additional filings bearing on the already pending motions. For the reasons set forth fully below, all motions are denied.

## II. FACTUAL BACKGROUND

The factual background of this case has been extensively developed in the court's previous opinions and shall not be repeated here. *See, e.g., Resolution Trust Corp. v. Fleischer,* 880 F.Supp. 1446 (D.Kan.1995); *Resolution Trust Corp. v. Fleischer,* 848 F.Supp. 917, 920 (D.Kan.1994); *Resolution Trust Corp. v. Fleischer,* 826 F.Supp. 1273, 1276 (D.Kan.1993). Additionally, because the pending motions present primarily questions of law, or the evidence presented clearly indicates questions of fact exist, the court's recitation of the pertinent facts here will be brief.

The defendants in this action are former directors and officers of Franklin Savings Association ("FSA"), a stock savings and loan association which was at all relevant times a federally insured depository institution. In 1984–1986, FSA participated in a series of transactions to enhance the marketability of several issues of tax-exempt revenue bonds. This series of transactions is collectively known as the credit enhancement program or the credit enhancement projects. Between late 1986 and mid–1988, FSA allegedly caused its wholly-owned subsidiary, Franklin Financial Services, Inc., to acquire the investment banking and securities brokerage businesses of Stern Brothers & Co. and Underwood Neuhaus & Co., Inc. The RTC contends that various defendants' actions in connection with the investments in both the credit enhancement projects and the broker-dealer subsidiaries amounted to breaches of fiduciary duties owed to FSA and negligence which resulted in tremendous losses to the savings association. *See Fleischer,* 848 F.Supp. at 924.

Defendants contend that they did not at any time conceal facts or prevent suit regarding the credit enhancement program or the acquisition of the broker-dealer subsidiaries. They contend that several shareholders of FSA were sufficiently informed concerning the credit enhancement projects and had the ability and motivation to induce FSA to file suit. They further contend that all relevant information regarding the Stern and Underwood Neuhaus acquisitions was disclosed to the public and available for a shareholder who had the ability and motivation to initiate a shareholder derivative action on behalf of FSA.

It is uncontroverted that the defendants named in this action constituted a majority of the FSA board of directors at all pertinent times prior to the appointment of a conservator.

One of the defendants specifically claimed to be liable for alleged acts or omissions regarding the credit enhancement projects is Ted R. Greene, Jr. While not a director of FSA during the relevant time periods, Mr. Greene was elected a vice-president in 1985 and remained in that position until 1989. Many of the FSA board resolutions authorizing various credit enhancement projects specify that "any Vice President of the Association ... is authorized and empowered to negotiate, enter into, execute and deliver for, in the name and on behalf of the Association" a variety of documents involving credit enhancement projects "in such forms and upon such terms and conditions as may be approved by the officer executing the same on behalf of the Association." Mr. Greene was given authority and did in fact execute a number of documents on behalf of FSA involving several credit enhancement projects.

Mr. Greene was also a member of the FSA senior loan committee that was established to make decisions on commercial loans and other loans exceeding $150,000 in mortgage amount. He remained on the committee from 1982 to until at least 1987, the period when the credit enhancement projects were being considered and approved. According to defendant Fleischer, the senior loan committee was a senior management committee with responsibility for the administration of FSA's commercial real estate investments and compliance with applicable statutes and regulations. The FSA board of directors delegated certain authority to the senior loan committee with respect to FSA's commercial real estate investments including the following activities: periodic review and evaluation; direct negotiation and administration; establishing terms upon which commercial real estate investment programs could be effectuated; enforcing remedial action; committing and funding investments which did not exceed $5,000,000; and waiving, extending, modifying or amending the terms of such

investments within the guidelines established by the FSA board.

## III. SUMMARY JUDGMENT STANDARD

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Langley v. Adams County, Colorado,* 987 F.2d 1473, 1476 (10th Cir. 1993). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anthony v. United States,* 987 F.2d 670, 672 (10th Cir.1993). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pac. R.R.,* 740 F.Supp. 1519, 1522–23 (D.Kan. 1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

## VI. DISCUSSION

### A. Motions Pertaining to the Statute of Limitations

The motions of defendants Fleischer, et al., for summary judgment on Counts I through VI [1] essentially involve resolution of the same issue, whether the adverse domination doc-

---

1. Counts I, II and III allege breach of fiduciary duty and implied contract, negligence and negli-

trine, as adopted and announced in *Resolution Trust Corp. v. Scaletty*, 257 Kan. 348, 891 P.2d 1110 (1995), applies to toll the running of the statute of limitations on the claims of the RTC under the circumstances of this case. Defendants contend that application of the doctrine does not toll the running of the statute of limitations because certain FSA shareholders had sufficient knowledge or notice of the circumstances, as well as the requisite ability and motivation, to bring suit on behalf of FSA. The RTC contends that shareholder knowledge is not relevant in applying the adverse domination doctrine as announced in *Scaletty*, and further that, even if relevant, the limitations period was sufficiently tolled because there was no shareholder with knowledge of a claim that could or would have filed suit on behalf of FSA. After careful consideration, the court finds that *Scaletty* does not contemplate an assessment of shareholder knowledge or action in determining when a financial institution is capable of discovering injuries caused by those who control it and that, pursuant to *Scaletty*, the limitations period in K.S.A. 60–513(b) does not begin to run, regardless of shareholder knowledge, until there exists a disinterested majority of nonculpable directors.

█ In *Scaletty*, the Kansas Supreme Court held that the doctrine of adverse domination is:

gence per se on the part of the defendants regarding the credit enhancement projects. Counts IV, V and VI allege the same causes of action based on the defendants' actions in connection with the broker-dealer subsidiaries. The court dismissed all of the RTC's claims for breach of implied contract and negligence per se on August 15, 1994 (Doc. # 409). To the extent any of the pending motions seek to dismiss these same claims, they are denied as moot.

**2.** The Kansas Supreme Court also held that the adverse domination doctrine is applicable to claims by a corporation against its directors based upon negligence, gross negligence and breach of fiduciary duty. *Scaletty*, 891 P.2d at 1111 Syl. ¶ 2.

**3.** Even though the RTC filed its complaint within the time allowed by the federal statute of limitations, *see* 12 U.S.C. § 1821(d)(14), it still must be shown that its claims had not expired under Kansas law at the time they were acquired. As

recognized in Kansas as the appropriate method for determining, under K.S.A. 60–513(b), when injury to a corporation by its directors is readily ascertainable by the corporation. The particular form of the doctrine to be applied is the disinterested majority version, wherein the fact of injury is deemed not to have been readily ascertainable until there exists a disinterested majority of nonculpable directors.

257 Kan. 348, 891 P.2d at 1111 Syl. ¶ 1.[2] Thus, the Court clearly adopted the adverse domination doctrine in its strictest form and in essence found that an injury does not become reasonably ascertainable to a corporation so long as the corporation is controlled by the individuals who allegedly caused the injury. *Id.* 891 P.2d at 1115–16. Although *Scaletty* does not explicitly explore whether shareholder knowledge might affect the determination of adverse domination, its reasoning and ultimate conclusions persuade this court that under Kansas law[3] only the existence of a disinterested majority of nonculpable directors is sufficient to trigger the running of the limitations period.[4]

*Scaletty* did not judicially create an exception to K.S.A. 60–513(b), but rather "determin[ed] the test to be applied in determining when certain injuries are readily ascertainable by the corporation under the statute."

noted by the Tenth Circuit in its certification order to the Kansas Supreme Court:

[T]he federal statute of limitations will not revive claims that have already expired before the RTC acquires them. Federal common law determines when federal claims accrued, even if the court borrows a state limitations period. State law, on the other hand, determines when state law claims accrued and whether they expired before the RTC took over. The RTC's claims … are state law claims related to a state-chartered institution. Kansas law therefore determines when those claims accrued and whether they expired before the RTC acquired them. *Scaletty*, 891 P.2d at 1114 (citations omitted).

**4.** This opinion does not purport to address the potential effect of a shareholder derivative action on the adverse domination doctrine. It is uncontroverted that no shareholder derivative action was filed in this case, nor did any officer or director file, instigate or otherwise authorize an action on behalf of FSA.

*Id.* 891 P.2d at 1116. The opinion indicates that a "corporate plaintiff cannot 'discover' injuries to the corporation caused by those who control the corporation" and that the "discovery rule requires that the claims by a corporate plaintiff or its successor ... may be tolled when the corporation has been prevented from 'knowing' those claims existed." *Id.* Knowledge to a corporation, the Court said, "can only come through its officers, directors, or employees, as the case may be." *Id.* 891 P.2d at 1115. Conspicuously absent from the Court's analysis is the idea that knowledge to the corporation, for purposes of K.S.A. 60–513(b), could come from its shareholders.

The Court went on to find that "[i]f the parties who caused the injury control the corporation, the corporation cannot take action to make itself whole unless those individuals who would be defendants in the action instigate and authorize the action." *Id.* "If the potential defendants take no such action," the Court stated, "the corporation has no power to act." *Id.* 891 P.2d at 1112, 1115 ("Only when a new entity takes control of the bank, be it a receiver or a new board of directors, can suit against the wrongdoers be brought as a practical matter.") (citing *F.D.I.C. v. Hudson,* 673 F.Supp. 1039, 1042 (D.Kan.1987)); *cf. F.S.L.I.C. v. Huff,* 237 Kan. 873, 877–78, 704 P.2d 372 (1985) (corporation can only act through its officers and directors). Thus, not only does it appear that shareholder knowledge is not imputed to the corporation for purposes of the discovery rule, but that, in this context, it is the acts of the directors, officers and employees of the corporation, not that of the shareholders, that are relevant under Kansas law.

The specific question certified by the Tenth Circuit was as follows: "Under Kansas law, does an action against corporate directors accrue *only* when those directors no longer control or 'adversely dominate' the corporation?" *Id.* 891 P.2d at 1111 (empha-

sis added). The answer given was: "... the fact of injury is deemed not to have been readily ascertainable *until* there exists a disinterested majority of nonculpable directors." *Id.* (emphasis added). Neither the question, nor the answer, seems to leave room for the conclusion that the knowledge of one, or a few, disinterested shareholders should be imputed to the corporation to begin the running of the statute of limitations against the corporation in the absence of a disinterested majority of nonculpable directors. Had the Kansas Supreme Court believed shareholder knowledge relevant, it certainly could have qualified its answer to the certified question or included some mention of its potential effect in its analysis.[5] Under *Scaletty,* it cannot fairly be said that shareholder knowledge or action is relevant in determining when to charge a corporation with knowledge of an injury caused by its directors and officers.

In explaining the adverse domination doctrine and the version adopted, the Kansas Supreme Court cited extensively from *Hecht v. Resolution Trust Corp.,* 333 Md. 324, 635 A.2d 394 (1994). In *Hecht,* the Maryland Court of Appeals adopted the "disinterested majority" version of the adverse domination doctrine and further held that to "rebut a presumption that accrual of the claim does not take place until a disinterested majority has replaced the culpable directors in control of the corporation, the defendants have the burden of showing that there was someone who had the knowledge, ability and motivation to bring suit during the period in which the defendants controlled the corporation." *Hecht,* 333 Md. at 351, 635 A.2d 394. In seeking to dismiss the RTC's claims by alleging that various shareholders had the requisite knowledge, ability and motivation to bring a suit against them, defendants rely on the statement of the rule in *Hecht* and argue that the Kansas Supreme Court implicitly adopted this rule.

---

**5.** It is worth noting that the Kansas Supreme Court explicitly refused to address the question of whether knowledge by regulators commences the statute of limitations even though it recognized that the certified question could be construed to include such an issue. While it appears that some justices at oral argument questioned

the potential effect of stockholder knowledge upon the accrual of claims, this issue was not specifically reserved in the *Scaletty* opinion. While perhaps not overwhelming, this is some indication that the Court did not deem shareholder knowledge material to the questions before it.

Many variances of the adverse domination doctrine exist. If the Kansas Supreme Court were embracing the *Hecht* version wholeheartedly, it easily could have made that intent clear. Instead, all it did was to refer generally to *Hecht* and other cases from different jurisdictions discussing adverse domination and considering shareholder knowledge. Absent more compelling evidence that the Court intended to adopt the *Hecht* version as Kansas' own, this court will not stretch the language of *Scaletty* to achieve that result. The Court specifically cited only to that portion of *Hecht* describing the disinterested majority version as effectively tolling claims "until there exists a disinterested majority of nonculpable directors." *Scaletty,* 891 P.2d at 1113 (citing *Hecht,* 333 Md. at 339, 635 A.2d at 394). It did not cite any portion of *Hecht* which could be construed to call for the imputation of the knowledge of disinterested shareholders to the corporation for purposes of the running of the statute of the limitations.

In short, the court finds that *Scaletty* does not permit the presumption of nonaccrual to be rebutted by evidence regarding shareholder knowledge. This rule is consistent with general principles of corporate law. Generally, the knowledge of a particular shareholder or shareholders is not material in considering the statute of limitations as a bar to a claim of the corporation itself. *See Liken v. Shaffer,* 64 F.Supp. 432, 442 (N.D.Iowa 1946). It is:

> the knowledge or lack of knowledge of those connected with the corporation whose knowledge is by law imputed to the corporation. Where those whose knowledge is ordinarily imputed to a corporation are the wrongdoers and they are in control of the corporation, the statute of limitations may be suspended until that situation is changed but that is not a matter having to do with the knowledge or lack of knowledge of a particular stockholder.

*Id.* at 442; *see also* 12B Fletcher Cyc. Corp. § 5886 (Rev.Ed.1993) (laches defense good against one derivative plaintiff stockholder will not preclude other stockholders or the corporation itself from later pursuing the same claim); *Goldberg v. Berry,* 231 A.D. 165, 247 N.Y.S. 69, 75 (1930) (striking limitations defense in a derivative action because "knowledge of the facts by one stockholder will not defeat the cause of action which belongs to the corporation); *Whitten v. Dabney,* 171 Cal. 621, 154 P. 312, 315 (1915). Similarly, a shareholder cannot ratify wrongful conduct so as to "extinguish a cause of action on which the corporation might otherwise have sued." 12B Fletcher, *supra,* §§ 5882, 5884 (release of a corporate claim by a majority of shareholders is not defense to a claim brought by the corporation).[6]

■ Moreover, unlike a director or officer, the law does not impose a strict fiduciary duty upon a shareholder to act in the best interest of the corporation. An individual shareholder may act in his or her own self-interest. *Unocal Corp. v. Mesa Petroleum,* 493 A.2d 946, 957 (S.Ct.Del.1985). A shareholder does not have an obligation to institute a derivative action even if it is in the best interest of the corporation. *See Heckmann v. Ahmanson,* 168 Cal.App.3d 119, 214 Cal.Rptr. 177, 184 (1985) (shareholder has a right to sue, but in no sense is it his or her duty to sue); *Whitten,* 154 P. at 315; *cf. Blocker v. Meehan,* No. 89–2147, 1989 WL 134473 (D.Kan. Oct. 2, 1989) (once on notice of claim, shareholders are "at liberty" to institute derivative action). Only when a particular shareholder steps forward to file suit does the shareholder assume a duty to the corporation. *Heckmann,* 214 Cal.Rptr. at 183–84, 186 (shareholder filing derivative action assumes a fiduciary duty with respect to the derivative claims) (citing *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 549, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949), which termed a shareholder bringing a derivative action a "volunteer champion"). It is uncon-

---

**6.** Corporations have on occasion been denied recovery when shareholders could not themselves recover, if those shareholders would receive a windfall and the demands of equity would dictate such a result: for instance, where all shareholders have ratified the conduct of the board or where shareholders have participated in the wrongdoing. *See Bangor Punta Operations, Inc. v. Bangor & Aroostook R. Co.,* 417 U.S. 703, 712–13, 94 S.Ct. 2578, 2584, 41 L.Ed.2d 418 (1974) and cases cited therein. These circumstances are not present here.

troverted here that no shareholder derivative action was ever filed. Under the circumstances the Kansas Supreme Court would most likely find that it would be unfair to create a rule which would effectively cut off the rights of FSA because of knowledge possessed by those who neither owed nor assumed a duty to the financial institution.

Finally, the Supreme Court's decision is consistent with the policy and purposes of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") as well as Kansas' tradition of imposing strict fiduciary responsibilities upon its directors and officers, particularly those of savings and loans. FIRREA was intended to establish a mechanism whereby government regulators such as the RTC in this case could contain, manage and resolve failed savings associations in order to put the federal deposit insurance funds on a sound financial footing. *See* Financial Institutional Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, § 101, 103 Stat. 183 (1989). A conservator or receiver is appointed to avoid further injury to the insurance fund and the public at large. *See F.D.I.C. v. Oldenburg,* 38 F.3d 1119, 1121 (10th Cir.1994). The interests of taxpayers, as well as those of the shareholders, are at stake. A shareholder whose losses are insured by the federal government and the public could be viewed as lacking motivation to diligently observe and account for the actions of the directors and officers of the institution. It is not surprising that, under Kansas law, the fact that one or many shareholders have slept on their right to bring an action on behalf of the financial institution would not preclude the RTC, standing in the shoes of that institution, from protecting the rights of the institution and the public at large. *Cf. Huff,* 237 Kan. at 880–81, 704 P.2d at 379 (breach of fiduciary duty by savings and loan officers which impairs the capital of a savings and loan institution is so serious and detrimental to the people of Kansas that joint and several civil liability is necessary).[7] Thus, the clear statement of the rule by the Kansas Supreme Court in *Scaletty,* well grounded on general principles of corporate law and on specific principles applicable to the special status afforded savings and loan under Kansas law and by federal statute, leads to the conclusion that the defendants' motion must be denied.

### B. Motion Pertaining to Senate Bill 762

■ In its 1993 session, the Kansas legislature enacted into law a statutory provision regarding the personal liability of officers and directors of savings and loans. *See* K.S.A. 17–5831. In its 1994 session, the legislature passed Senate Bill 762 (K.S.A. 9–1133 & 9–1134), which specified that K.S.A. 17–5831 was to be retroactively applied to all actions not finally adjudicated prior to its 1993 enactment. Defendants' motion for summary judgment asks the court to apply the provisions of K.S.A. 17–5831 retroactively to this action, which would have the effect of eliminating the RTC's accrued actions for negligence and breach of fiduciary duty against nearly every defendant.

In August of 1994, this court certified the following questions to the Kansas Supreme Court as authorized by K.S.A. 60–3201 *et seq.*:

(1) Under Kansas law, does the holder of accrued tort actions for negligence and breach of fiduciary duty, which have not yet been reduced to judgment, have a vested property right in those causes of action?

(2) Is Senate Bill 762, which makes K.S.A. 17–5831 retroactive, unconstitutional under the constitution of the State of Kansas when applied to claims which accrued prior to its enactment?

The Kansas Supreme Court has answered both questions in the affirmative and has

---

**7.** In *Huff,* the Kansas Supreme Court went on to note:

The potentiality for harm to Kansas citizens from mismanagement of savings and loan associations is enormous. A large percentage of their investors place their life savings in such institutions, relying upon the officers of such institutions to discharge their duties properly.

When a savings and loan association fails the domino effect can be staggering. Public confidence in all savings and loans is shaken. Declining deposits in savings and loan associations have a direct effect on the construction, sale, and resale of homes, which in turn affects many other areas of our economy.

237 Kan. at 881, 704 P.2d at 379.

specifically held that Senate Bill 762 (K.S.A. 9–1133 & 9–1134) is unconstitutional. *Resolution Trust Corp. v. Fleischer,* 257 Kan. 360, 892 P.2d 497 (1995). Because the success of defendants' motion rested on the constitutionality of Senate Bill 762, the court finds that the motion must now be denied.

### C. Ted Greene, Jr.'s Motion

■ Defendant Greene has moved separately for summary judgment arguing that the fact that he was not a director of FSA during the relevant time period absolves him of any liability for the claims asserted in Counts I, II and III of the first amended complaint (involving the credit enhancement projects). He contends that every act, recommendation and omission which the RTC alleges gives rise to liability on his part was taken or would have been taken by him as an officer or director of Franklin Realty Corporation ("Realty"), a separate and distinct corporation from FSA, and not in his capacity as a vice-president and member of the senior loan committee of FSA, and, based on various legal theories, that this fact is dispositive of the issue of liability. The RTC disputes these factual assertions and contends that Mr. Greene's extensive involvement in, and responsibility for, the credit enhancement projects places him in the "inner circle" of wrongdoers giving rise to liability. The extent to which, and in what capacity, Mr. Greene was involved in the credit enhancement projects clearly turns upon questions of fact which cannot be resolved upon summary judgment. Genuine issues of material fact preclude granting summary judgment in favor of Mr. Greene on any legal theory asserted.

Defendant Greene first contends that the RTC has no standing to bring a claim against him because he was an employee of Realty, a separate and distinct entity from FSA. Defendant relies on the court's previous ruling that the RTC cannot pursue a defendant for an alleged negligent act or breach of duty that occurred solely in the defendant's capacity as a director of one of FSA's subsidiary corporations, but must instead show that a defendant was acting in his capacity as an officer or director of FSA in order to put the challenged conduct at issue. *See Fleischer,* 848 F.Supp. at 925. The RTC, however, is not pursuing Mr. Greene for any negligent act or breach of duty owed to a subsidiary corporation, but rather for breaches of duties owed to FSA. Thus, it is incumbent upon Mr. Greene to show, in order to merit judgment as a matter of law, that his involvement in the credit enhancement projects as a matter of uncontroverted fact was solely as an employee of Realty and that he owed no duties to FSA. He has not made such a showing.

The RTC has presented sufficient evidence demonstrating that a genuine issue of material fact exists with respect to whether Mr. Greene acted as an officer of FSA in conjunction with the credit enhancement projects and did not act solely in the capacity of an officer or director of Realty. It is uncontroverted that Mr. Greene was an FSA vice-president and a member of the FSA senior loan committee during the time periods relevant to the credit enhancement projects. The RTC has presented evidence indicating that Mr. Greene's extensive involvement in the credit enhancement projects carried over into his role as FSA vice president. There is evidence which could give rise to the reasonable inference that, as FSA vice president, he had authority to negotiate and execute credit enhancement documents on behalf of FSA, including the power to approve the forms, terms and conditions of such documents, and that, pursuant to this authority, Mr. Greene actually executed certain credit enhancement documents. Moreover, there is evidence that as a member of the senior loan committee, Mr. Greene was part of the upper tier of management at FSA. For example, defendant Fleischer specifically testified that the senior loan committee was composed of "senior management." [8] The evidence that defendant Green acted only in the capacity as an officer or director of Realty and not as an

---

**8.** Although Mr. Greene argues that evidence regarding his participation on the loan committee is of little relevance because he was a non-voting member, the court finds the evidence on this point conflicting and that a genuine issue of fact exists with respect to whether Mr. Greene was actually a voting member of the committee.

officer of FSA with respect to the credit enhancement projects is far from being so one-sided that he is entitled prevail on this issue as a matter of law. *See Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

It follows from these facts that plaintiff has made a sufficient showing for purposes of this motion that Mr. Greene could have owed certain duties to FSA giving rise to liability in the event of breach. Kansas law is clear, and defendants do not dispute, that officers of a corporation owe a strict fiduciary duty to act in the best interests of the corporation and its shareholders. *Huff,* 237 Kan. at 879, 704 P.2d 372; *see also* 3 Fletcher, *supra,* § 991 (To a great extent the rules governing liability are the same without regard to whether the officer sued is a director or some other officer such as the president, vice-president, etc.). To the extent Mr. Greene, as a vice-president who also accepted a position on the senior loan committee, participated in the management of FSA, he would have assumed a fiduciary relationship with respect to FSA assets. *See Kirk v. H.G.P., Corp.,* 208 Kan. 777, 779, 494 P.2d 1087, 1090 (1972) (managers of corporation have a fiduciary relationship with regard to the corporate assets). Even if membership on the senior loan committee would not by itself give rise to the same duties as the position of vice-president, the responsibilities assumed in his capacity as a member of the senior loan committee are facts which may be considered along with all others in measuring Mr. Greene's responsibilities to FSA. *See Syracuse Telev. Inc. v. Channel 9, Syracuse, Inc.,* 51 Misc.2d 188, 273 N.Y.S.2d 16, 27 (N.Y.Sup.Ct.1966).

Defendant Greene next argues that, in approving all investments in the credit enhancement projects, the FSA board of directors ratified any and all actions he took with respect these investments and, as a result, FSA waived any right to and is estopped from recovering through a suit by the RTC any alleged losses therefrom. To the extent that this argument seeks to impute the actions or negligence of FSA to the RTC, defendant's argument is rejected. The court's previous order striking Mr. Greene's defenses which sought to impute the alleged negligence of FSA to the RTC remains the law of this case. *See Fleischer,* 835 F.Supp. at 1326. While an argument can be made that the United States Supreme Court ruling in *O'Melveny & Myers v. F.D.I.C.,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), would alter the court's previous analysis with respect to this issue, the Tenth Circuit's opinion in *F.D.I.C. v. Oldenburg,* 38 F.3d 1119 (10th Cir.1994), and the circuit's subsequent refusal to revisit this issue by way of an interlocutory appeal, clearly indicates that the court's previous ruling must stand under the law as established in this circuit.

To the extent defendant's argument seeks to compare the fault of other directors and officers to his own, the court finds that questions of fact remain precluding summary judgment. While defendant's argument is phrased in terms of ratification, waiver and estoppel, defendant essentially seeks a finding, as a matter of law, that Mr. Greene was assigned and assumed only limited duties with respect to FSA and that he performed these duties adequately and appropriately. Factual issues and disputes abound with respect to these issues. The precise scope of the duties Mr. Greene assumed necessarily involves a weighing of the facts, a task inappropriate for the court upon summary judgment. Similarly, whether Mr. Green breached the fiduciary duties or the standard of care owed is inherently a fact question for the jury. Defendant's motion is therefore denied on this basis.

Defendant Greene's final argument is that he is shielded by the business judgment rule. He concedes in his papers, however, that the business judgment rule is not available to officers of a savings and loan, citing *Huff,* 237 Kan. at 880, 704 P.2d at 378. To the extent that a fact question exists with respect to whether Mr. Greene acted solely as an officer and director of Realty, the business judgment rule, as narrowly defined by the defendant in his papers, does not relieve him of liability as a matter of law. Moreover, even if the business judgment rule were to apply to Mr. Greene's conduct, genuine issues of material fact exist whether the rule affords him the protection claimed.

## V. CONCLUSION

**IT IS THEREFORE ORDERED BY THE COURT** that the motion of defendants Ernest M. Fleischer, et al., for summary judgment on Counts I, II and III of plaintiff's first amended complaint (Doc. # 254) is denied.

**IT IS FURTHER ORDERED** that the motion of defendant Ted Greene, Jr. for summary judgment on Counts I, II and III of plaintiff's first amended complaint (Doc. # 320) is denied.

**IT IS FURTHER ORDERED** that the motion of defendants Fleischer, et al., on Counts IV, V and VI based upon the statute of limitations (Doc. # 322) is denied.

**IT IS FURTHER ORDERED** that the motion of various defendants for summary judgment based on new law (Doc. # 373) is denied.

**IT IS SO ORDERED.**